## In re SCHMIDT et al.
### No. 2535.

Court of Customs and Patent Appeals.
Jan. 12, 1931.

Hauff & Warland, of New York City (William E. Warland, of New York City, of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals affirming the decision of the Primary Examiner denying claims 7, 8, 9, 11, 12, and 13 in appellants' application for an alleged invention relating to a process for the manufacture of methanol.

Claims 7, 8, 12, and 13 relate to the use of a catalytic substance substantially free from iron, nickel, and alkali compounds. Claims 9, 11, and 12 relate to the use of a combination catalyst containing copper and substantially free from iron and nickel. Claims 7 and 9 are illustrative, and describe the process in issue. They read:

"7. The process of manufacturing methanol by catalytically reducing the oxids of carbon with hydrogen, which consists in passing a mixture of one volume of oxids of carbon and at least one volume of hydrogen at a pressure of at least 30 atmospheres and at a temperature of at least 200 degrees Centigrade and no more than about 500 degrees Centigrade over a contact mass containing a catalytically acting element and an element selected from a group between the third and eighth groups of the periodic system and the even numbered lines of the large periods, but substantially free from alkali compounds, iron and nickel being present, if at all, only in small amounts together with other catalytically acting metals."

"9. The process of manufacturing methanol by catalytically reducing the oxids of carbon with hydrogen, which consists in passing a mixture of one volume of oxids of carbon and at least one volume of hydrogen at a pressure of at least 30 atmospheres and at a temperature of at least 200 degrees Centigrade and no more than about 500 degrees Centigrade over a contact mass containing copper and an element selected from a group between the third and eighth groups of the periodic system and the even numbered lines of the large periods, iron and nickel being present, if at all, only in small amounts together with other catalytically acting metals."

The references are:

Mittasch et al., 1,201,850.
Mittasch et al., 1,569,775.
Dreyfus (Br.), 108,855.
Patart (Fr.), 540,543.

The tribunals below held that, as the patents to Patart and Dreyfus did not mention the presence of alkali compounds, they should be considered as disclosing catalytic agents free from such compounds; that, as the patent to Mittasch et al., No. 1,569,775, owned by appellants' assignee, did not disclose the presence of iron or nickel in their catalytic compounds, this reference should be considered as disclosing catalysts free from such substances; and that therefore claims 7, 8, 12, and 13 were not patentable over the prior art. In this connection the Board of Appeals, among other things, said:

" * * * The applicants' view would appear to support the procedure of obtaining a patent upon the Patart or Dreyfus process, just as disclosed by such patentees, and merely adding to the claims and the description that an alkali compound was absent, and, afterwards, obtaining another patent for the identical process already patented, and stating in such last patent that iron and nickel were absent, and, still later, obtaining another patent for this same identical process and stating that some other unnecessary element was absent, and so on indefinitely. We deem the prior art supports the holding that there was nothing inventive in using the process as described by these patentees and leaving out such substances as these patentees have not stated should be present. As to the proportions of the parts and the pressures and temperatures employed by the applicants, these are all fairly disclosed in the prior art."

With reference to claims 9, 11, and 12, the Patent Office tribunals concurred in holding that, as the patents to Patart and Dreyfus disclosed the use of copper as a catalyst, and as the patent to Mittasch et al., No. 1,201,850, disclosed the advantages of using certain metals, compounds thereof, and mixtures of two or more of such metals as catalytic agents, there was no invention in simply combining copper, disclosed in Patart and Dreyfus, with some of the metals disclosed in the patent to Mittasch et al., No. 1,201,850.

In this connection, the examiner said:

" * * * No invention is seen to be involved in using in the Patart process copper associated with one of the other catalysts of the type named. It is considered that this would be an obvious thing to try out by those investigating the various catalysts in connection with methanol synthesis in view of Mittasch's use of mixtures."

The Board of Appeals concurred in the views expressed by the examiner, and said:

" * * * To merely select two or more of these materials, which the prior art teaches may be used jointly as the catalytic compound, would involve nothing more than the mere following of the teachings of the prior art."

It is argued by counsel for appellants that, although alkali compounds are not declared to be present in the catalysts disclosed in the patents to Patart and Dreyfus, and iron and nickel are not mentioned as being present in the patent to Mittasch et al., No. 1,569,775, it does not necessarily follow that these patentees disclosed, or had in mind, the exclusion of these substances.

We are unable to accept this view. Regardless of the commercial practice prior to, or after the disclosures in the patents to Patart, Dreyfus, and Mittasch et al., No. 1,569,775, the failure of Patart and Dreyfus to mention the presence of alkali compounds, and the failure of Mittasch et al. to mention the presence of iron and nickel, ought to have been and was, in our opinion, sufficient to suggest to one skilled in the art that the presence of those substances in catalytic agents was not necessary. Furthermore, it is definitely stated in the patent to Mittasch et al., No. 1,201,850, that an alkali may or may not be added to the catalytic agents therein disclosed.

With reference to claims 9, 11, and 12, it is argued by counsel that appellants' disclosure of a catalytic compound containing copper is not definitely shown in any of the patents of record; that a new and useful result has been obtained by a new combination of old elements; and that therefore these claims are patentable over the references of record.

Patart and Dreyfus each disclosed the use of copper as a catalyst. Mittasch et al., No. 1,201,850, disclosed the use of catalysts composed of certain metals and mixtures of two or more of them. In view of these disclosures, it would seem to be reasonable to conclude that one skilled in the art would readily deduce that a catalyst composed of copper and some of the metals or mixtures disclosed by Mittasch et al., No. 1,201,850, might be successfully employed in the manufacture of methanol. Nor are we impressed with the proposition that a combination catalyst, resulting from experiments plainly suggested by the prior art, would be patentable, even though it produced new and useful results.

■ It appears from the record that about a year after appellants' claims had been finally rejected by the Primary Examiner, counsel proposed to amend appellants' application by incorporating four new claims, Nos. 14 to 17, directed to the exclusion of alkali. The exclusion of iron and nickel from the process was not mentioned therein.

In rejecting the proposed amendment, the examiner said:

" * * * Because applicant has thought up a new argument to present as to why claims rejected are not considered by him to be anticipated is no reason why the final re-

jection should be set aside at the last moment for the reconsideration of claims and the entry of new claims. A case could never be closed if such practice is followed."

Due to the fact that the proposed claims had not been considered by the Primary Examiner, the Board of Appeals declined to review them.

It also appears that claims 18 to 21 were not before the Primary Examiner, but were first submitted to the Board of Appeals, and that the board declined to consider them.

It is earnestly urged by counsel for appellants that this court give consideration to all of these claims.

We are of opinion that the Primary Examiner was entirely justified in rejecting the proposed amendment—claims 14 to 17—for the reasons pointed out in his decision. Claims 18 to 21 were not properly before the Board of Appeals. Accordingly, they will not be considered by this court. In re Schneider (Cust. & Pat. App.) 39 F.(2d) 278; 17 C. C. P. A. 952; In re Stern (Cust. & Pat. App.) 40 F.(2d) 1000, 17 C. C. P. A. 1234.

The decision is affirmed.

Affirmed.