39 C.C.P.A.(Patents)

Application of **LUNDBERG** et al.

Patent Appeal No. 5860.

United States Court of Customs and
Patent Appeals.

May 28, 1952.

Rehearing Denied June 24, 1952.

E. Clarkson Seward, New York City, for appellants.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the examiner in finally rejecting claims 99 to 116 of the application filed by appellants for a patent covering improvements in a method and an apparatus employed in geophysical exploration by an operator transported in an aircraft or boat for the purpose of locating and recording valuable deposits, such as ore and oil, in the earth below.

Various references enumerated in the examiner's rejection were regarded by the board as merely cumulative. The latter discussed and relied upon pertinent disclosures of the following prior art of record: Hart 2,407,663 Sept. 17, 1946; Hull 2,468,554 April 26, 1949; Machts (Br.) 433,450 Aug. 12, 1935; Heiland article, Engineering and Mining Journal, December, 1935, pages 609, 610; Heiland Text, "Geophysical Exploration," page 41, published 1940.

Claims 99, 107, and 114 are illustrative of the subject matter of the respective

groups of the appealed claims and read as follows:

"99. Apparatus for geophysical exploration comprising, [1] a maneuverable fluid supported craft adapted to transport an operator and the hereinafter recited equipment, [2] a detecting instrument carried by said craft which is responsive while the craft is in motion and stationary to effects of earth anomalies related to mineral deposits in the earth, [3] means carried by said craft in operative connection with said instrument and effective automatically to stabilize the latter with respect to both leveling and orientation regardless of the motions of the craft, and [4] an automatic recording device also carried by said craft in operative connection with said instrument for making a record of said effects of said anomalies as the instrument responds thereto.

"107. Apparatus for geophysical exploration comprising, a maneuverable fluid supported craft adapted to transport an operator and the hereinafter recited equipment, a detecting instrument carried by said craft which is responsive while the craft is in motion and stationary to effects of earth anomalies related to mineral deposits in the earth, means carried by said craft in operative connection with said instrument and effective automatically to stabilize the latter with respect to both leveling and orientation regardless of the motions of the craft, said instrument embodying means for projecting to the earth ultra high frequency electric wave impulses, and means also carried by the craft for receiving and recording said waves as reflected by said anomalies.

"114. A method of geophysical exploration which includes the following steps, transporting by fluid suspension over an area under investigation an operator and a detecting instrument which is responsive while in motion and stationary to effects of earth anomalies related to mineral deposits in the earth, automatically stabilizing said instrument with respect to both leveling and orientation against motions of the transporting means, automatically making a record of said effects of said anomalies as the instrument responds thereto, identifying for subsequent examination the terrain indicated as containing said anomalies, and geophysically interpreting the cumulative information thus obtained."

The detecting device defined by the claims may include a means for generating and directing electric wave impulses, the reflections of which are recorded as detected and disclosing valuable deposits lying beneath the surface of the area surveyed. The wave generator described in the specification and accompanying drawings consists of an ultra high frequency oscillator connected to a resonator or wave guide capable of projecting the waves in any desired direction, preferably in the form of a compact, narrow beam. As stated in appellants' brief:

"The detecting instrument, its automatic stabilizing means, and the automatic recording device are mounted in the craft and operatively interconnected. The craft is then flown or sailed in one or more courses over the area being explored with constant recording of the effects of the electric and/or magnetic conditions encountered * * *. The recorded data thus obtained is interpreted by procedures known to geophysicists '*the result of the whole survey enabling the operator to determine the existence, location, length, width, outline, depth beneath the earth's surface and bodily thickness of the sought for deposit.*'" [Italics quoted.]

Obviously the coverage of the area selected to be thus surveyed can be completed more rapidly than if the transportation of the claimed apparatus were taking place on the ground. The practical, commercial advance over the prior art which appellants rely upon for patentability is quoted in the following excerpt from the record:

" * * * Its merit as contrasted with prior activities in this art may be

illustrated by noting that, some time ago, one of the applicants in an helicopter plane with an operator explored an area in Canada of several square miles, which area had previously been explored by a geophysicist in in the employ of a very large and well known mining concern, the previous exploration of the area being conducted by modern ground methods. This previous exploration required the services of eight men for seventy days. Applicant in the helicopter did the same work in one hour and obtained substantially identical results. Maps exhibiting these two explorations will be submitted to the examiner if he desires to see them."

 However, appellants did not establish the facts hereinbefore asserted by a proper showing in the record. That is an essential requirement of the patent law, as stated in the recent case of Blanchard v. Ooms, 80 U.S.App.D.C. 400, 153 F.2d 651, certiorari denied 329 U.S. 715, 67 S.Ct. 46, 91 L.Ed. 621.

The principal reference, the patent to Hull, relates more particularly to improved methods and apparatus for detecting and measuring intensities and anomalies in the earth's magnetic fields, such as those produced by the presence of mineral or oil deposits or metallic bodies, etc. The apparatus may be mounted on a moving vehicle, such as an aircraft or boat, which may be "employed for the location of submerged undersea craft." Hull describes the use of an instrument to detect the investigated anomalies, while the supporting craft is stationary or in motion. Hull also describes a gyroscope which, as in the appealed claims, functions as a stabilizing means for the instrument as it is moved through the magnetic field.

The board affirmed the examiner's rejection of claims 99 through 106 as directed to an old combination of elements disclosed in the patent to Hull. We are unable to disagree with that decision. Appellants' suggestion that Hull's use of an aircraft for transporting the apparatus and its operator is confined merely to the location of undersea craft is without merit, as are the suggestions by appellants that Hull's claims are limited solely to a small area; that his device does not describe making a record; and that a line of patentable distinction, as defined by dependent claims 105 and 106, must be drawn here between "electric" and "magnetic" responses.

It is observed that appellants in their specification disclose certain of their measurements may also be made from balloons, kites, or the like, but point to no unusual advantages for any particular type of maneuverable fluid supported craft. Moreover, the British patent to Machts provides a geographical research method:

"* * * wherein a detection apparatus having an antenna is moved over a chosen path and is adapted to give substantially continuous indications in the form of oscillograph diagrams of the intensity and/or direction of the local electric fields, and means being arranged to record automatically such indications when desired, further means being also arranged for indication simultaneously of the position of the apparatus on the chosen path when such records are being made, the results of such records affording an indication of the position and nature of a local disturbance in the electric field and therefore of the position of a local subterranean irregularity."

The Heiland article mentions the use of a zeppelin, an airship or balloon, which has the same hovering characteristics as the helicopter defined by claim 102, and the Heiland text discloses the use of a submarine in geophysical surveying, as called for by claim 103. Claim 104, which adds the limitation to claim 99 of gyroscopically controlled means for stabilizing the detecting instrument, was rejected by the board as being unpatentable over Hull.

 Appellants concede in their brief that "Hull does say that the detecting coil is positionable by a gyroscope so as to maintain it in a predetermined direction." They argue, however, that their claimed control is patentably distinct from the disclosure of Hull, because Hull's control is

employment of the conventional automatic effected by a pair of magnetometer coils which control the gyroscope. That contention is without merit. A prior art patent is a good reference not only for what it discloses by way of direct anticipation but also for what it suggests that is not patentably distinct therefrom to any person skilled in the art.

Claims 107 to 113 differ essentially from claim 99 in that the detecting means defined by this group of claims embodies "means for projecting to the earth ultra high frequency electric wave impulses, and means also carried by the craft for receiving and recording said waves as reflected by said anomalies." In other words, these particular claims contain not only the same combination defined by claim 99, but also include specific details with respect to the character of the detecting instrument. The claims stand rejected, among other grounds, as unpatentable over the disclosure of the patent to Hart.

Hart's disclosure relates to the measurement of distance by the use of electromagnetic waves and is associated with a device applicable from the ground or from different heights in an aircraft for accurately locating the position of the object being observed on land or at sea. The Solicitor for the Patent Office correctly points out that Hart projects the same type of impulses toward the area surveyed by the operator in his plane, that the apparatus employed by Hart includes a receiver for the reflection of the impulses, and that, whatever other purpose Hart had in mind, his device would operate to indicate geological anomalies. It is true that there is no element disclosed by Hart to interpret the results on the receiving oscilloscope, but it is fundamental that a structural anticipation disclosed by a reference is sufficient, although the functions of the two devices are different. In re Griswold, 152 F.2d 1014, 33 C.C.P.A., Patents, 799. The stabilizing feature involved here is not specifically disclosed by Hart but that function might well be accomplished, as suggested by the board, by care of the operator in piloting the plane, as would the pilot or gyroscopic stabilizing apparatus. The decision of the board, as well as the brief for the Solicitor of the Patent Office, has devoted several printed pages of text to the specific details with respect to the character of appellants' detecting instrument, all of which definitely establish that those details do not singly or collectively constitute a patentable variation over the disclosure of Hart. Accordingly, we deem it unnecessary to prolong this opinion by the further discussion of the unpatentability of this group of claims.

All of the steps defined by the limitations of claim 114, save one, as properly noted by the board, would inherently be performed in the normal operation of the Hull apparatus. The excepted step, "identifying for subsequent examination the terrain indicated as containing said anomalies," involves no patentable variant from the disclosures of the art of record. The dropping of markers, the taking of photographs, the transportation of the apparatus at different heights, as defined by claim 115, and of determining the point of strongest effect of the anomaly and the limits of such, as defined by claim 116, appear to be the obvious manner of carrying out the Hull process and define nothing inventive thereover.

The final limitation of claims 114 to 116, which calls for "interpreting the cumulative information thus obtained," involves a purely mental step which can nowise lend patentability to the claims. In re Shao Wen Yuan, 188 F.2d 377, 38 C.C.P.A., Patents, 967.

A careful analysis of the facts and law applicable thereto clearly establishes that no patentable subject matter is defined by the appealed claims, and the decision of the Board of Appeals is accordingly affirmed.

Affirmed.

JACKSON, J., sat during the argument in this case but retired April 1, 1952, before the opinion was fully prepared. He was recalled in conformity with Section 294(c, d), Title 28 U.S.C. to participate in the decision and did so.