Johnson, Chief Judge,
delivered the opinion of the Court:
This is an appeal from a decision of the Board of Appeals of the United States Patent Office, rejecting claims 51 and 54-58, the only remaining claims in appellants’ application for “Apparatus for and Method of Geophysical Exploration.”
The application here involved, No. 2,885, filed January 17, 1948, is a division of application No. 561,436, filed November 1, 1944; claims presented in the latter were before this court on appeal, In re Lundberg et al., 39 C. C. P. A. (Patents) 971, 197 F. 2d 336, 94 USPQ 73, from a rejection by the board. The claims there involved, however, were broader than the instant claims and were rejected over a combination of references different from that here applied. That case, therefore, is not controlling of the instant appeal and will not be considered further.
The following claims are representative of the claims on appeal:
51. Apparatus as defined in claim 54, in wbicb tbe detecting instrument is provided witb at least one coil having a core composed of metal which is not only extremely sensitive to variations in intensity of natural or artificially created magnetic fields but is also strongly resistive to change in its operative characteristics when exposed to mechanical vibrations, thermal variations, or barometric fluctuations, such as nichrome.
54. Apparatus for geophysical exploration from the air comprising, the combination with a maneuverable airplane adapted to transport an operating crew and the hereinafter recited equipment, of a magnetic detecting instrument carried by the airplane and adapted while in the air automatically to receive and respond to with a sensitivity of one gamma or less magnetic effects of earth anomalies related to mineral deposits, a support for said detecting instrument carried by the airplane in operative association with the detecting instrument and adapted automatically to stabilize the latter in relation to level and orientation regardless of motions of the airplane, and a record making device also carried by the airplane in operative association with the detecting instrument and adapted simultaneously to make a record of the said effects of the said anomalies to which the detecting instrument responds.
*912 55. A method of geophysical exploration from a maneuverable airplane which includes the following steps: transporting by such an airplane over an area under investigation an operating crew and magnetic detecting equipment capable of automatically receiving and responding to with a sensitivity of one gamma or less effects of earth anomalies related to mineral deposits, such as changes in the earth’s magnetic field or a magnetic field artificially created in the earth; automatically stabilizing said detecting equipment in relation to level and orientation during transportation regardless of motions of the transporting airplane; automatically making a record of the said effects of such anomalies which the detecting equipment receives and to which it responds as it responds thereto; identifying for subsequent examination the terrain indicated by the said received and recorded effects as containing such anomalies; and geo-physically interpreting the record thus obtained.
56. Apparatus as defined in claim 54, in which the detecting instrument is adapted simultaneously to detect and measure at least two components, such as the horizontal and vertical lines of force, of the magnetic field to which the instrument responds.
The alleged invention relates to apparatus for and a method of geophysical exploration for the discovery of mineral deposits in the earth, said exploration being conducted from an airplane while in flight. Broadly, the apparatus consists of an airplane carrying a magnetic detecting instrument which is responsive to the effects of earth anomalies related to the presence of mineral deposits in the earth, means for stabilizing the detecting instrument with respect to both leveling and orientation regardless of the motions or vibrations incident to the flight of the airplane and an automatic recording device for making a record of the detecting instrument’s response to the presence of mineral deposits.
The references relied on are:
Machts, 2,246,259, June 17, 1941
Hull, 2,468,554, Apr. 26, 1949.
“Physical Review”, September 1923, pp. 279-294. Photostat copy in 175-183-15.3.
Heiland Article, Engineering and Mining Journal, December 1935, pages 609-610. Copy in 175-182-4.
The Hull patent discloses a method of and apparatus for detecting anomalies below the earth’s surface related to the presence of mineral deposits or metal objects. The apparatus disclosed therein comprises a magnetometer detecting element mounted upon a gyroscopic stabilizing means, which means is cooperatively associated with a pair of mutually perpendicular positioning magnetometer elements, and a recording or indicating device which is responsive to impulses emitted by the detecting element. Hull states that the foregoing apparatus performs with a high degree of accuracy even when subjected to vibration incident to carriage in “aircraft.”
*913 Machts discloses a. method of and apparatus for investigating irregularities below the surface of the ground (i. e., due to the presence of oil) by means of electric fields. He teaches the use of a recording device in association with a suitable detecting instrument, which device automatically records the response of the detecting instrument to the presence of said irregularities.
The “Physical Review” article discusses the use of magnetrons for detecting magnetic fields and discloses various circuits which may be employed for such use.
The Heiland Article consists essentially of a review of the history of geophysical mapping from the air. It is stated therein that magnetic measurements “may not only be made in ballons (sic), but in airships and airplanes as well.” The author discusses one survey which he conducted from an airplane, the purpose of which was the detection of the weak magnetic anomalies associated with most oil fields. The author also points out the necessity of taking accurately timed photographs of the ground while the airplane is moving in order to correlate geophysical measurements in the air with the ground location.
The board held that insofar as the appealed apparatus claims positively recited structure they were unpatentable over the prior art of record. It was of the opinion that the “adapted” clauses in claims 54 and 56 were functional and could not be relied upon to distinguish said claims, nor claims 51, 51 and 58, which are dependent thereon, over the prior art. It was also of the opinion that claim 55, the sole method claim in this case, was as well unpatentable over the cited references.
Following the board’s decision, appellants submitted a petition for reconsideration, alleging that the board committed error in failing to give effect to the third paragraph of section 112 of the Patent Act of 1952,[1] which, by virtue of section 4 (a) of the Act of July 19, 1952, c. 950, 66 Stat. 815, applies “to further proceedings on applications pending on” the effective date of the act (viz. January 1, 1953), and which permits the claiming of an “element in a claim for a combination * * * as a means * * * for performing a specified function without the recital of structure, material, * * * in support thereof, and such claim shall be construed to cover the corresponding structure, * * * described in the specification and equivalents thereof.” Appellants claimed that the “adapted” clauses were equivalent to “means” clauses.
*914 In their petition, appellants offered to cancel all the claims here on appeal and submitted three new claims, 59, 60 and 61, which they hoped to substitute in lieu of those proposed to be cancelled (these three claims contained “means” clauses in place of the “adapted” clauses of the instant claims). The board granted appellants’ motion for reconsideration but did not alter its original conclusions. It made no mention in its second decision of appellants’ proposed substitute claims.
Appellants then petitioned the Commissioner to reopen prosecution for consideration by the Primary Examiner of their proposed amendment in the light of the provisions of the third paragraph of section 112 of the 1952 Act. This petition was referred to a Supervisory Examiner who denied the petition.
Both the board’s action in refusing to give effect to the “adapted” clauses as well as its failure to consider the proposed substitute claims submitted by appellants to it in their petition for reconsideration and to recommend their allowance by the examiner have been assigned as error by appellants.
Consideration of the latter assignment of error will be deferred to a later portion of this opinion.
In view of the nature of the appealed claims, we deem it necessary, at this juncture, to consider appellants’ contentions as to the weight to be given the “adapted” clauses, where they appear in the claims, under the provisions of 35 U. S. C. 112. For purposes of this decision, we will assume, without deciding, that the recitations in the claims of a specified element plus an “adapted” clause are equivalent to a “means for performing a specified function” within the contemplation of 35 U. S. C. 112.
We agree with appellants that, though prosecution before the examiner was closed prior to the effective date of the Patent Act of 1952, the proceedings in this case before the board and this court are such “further proceedings” as are contemplated by section 4 (a), supra, and that the appealed claims are subject to the provisions of section 112. In re Arbeit et al., 41 C. C. P. A. (Patents) 719, 206 F. 2d 947, 99 USPQ 123.
Appellants’ arguments respecting the applicability of section 112 apparently are based upon the assumption that, while the broadly recited structure defined by the claims containing the “adapted” clauses may read upon the prior art, the functional limitations in said “adapted” clauses are not shown by said art; that these functional limitations, taken together with the recitation of “means” (and as aforesaid, we are, for purposes of this opinion, construing the recitation of structure, such as “a magnetic detecting instrument,” plus *915 an adapted clause, to be equivalent to a recitation of “means” plus function), may serve patentably to distinguish over the art by virtue of the third paragraph of section 112 which provides that “* * * such claim shall be construed to cover the corresponding structure, * * * described in the specification and equivalents thereof.”
As will hereinafter be discussed, however, we are of the opinion that both the structural and the functional limitations in each of the above mentioned claims, in the broad language in which they are couched, are either directly set forth or reasonably suggested by the prior art of record. Therefore, unless the above recited clause in the third paragraph of section 112 is to be construed to mean that, though the claims as drawn read on the prior art, both as to function and structure, the claims may, through the medium of a “means” clause, be held to include the limitations which comprise said means and which are set forth in the disclosure, we must reject appellants’ contentions as to the effect of section 112 on the claims in this case. That such a construction is untenable will be seen from the following brief analysis of section 112.
The third paragraph[2] of 85 U. S. C. 112 made its initial appearance in the Patent Act of 1952. As correctly stated by appellants in their brief, this paragraph was designed, at least in part, to modify or overrule such decisions as Halliburton Oil Well Cementing Co. v. Walker, 329 U. S. 1 (1946),[3] and, as pointed out by an augmented Board of Appeals in Ex parte Ball & Hair, 99 USPQ 146 (Bd. App. 1953, “* * * some measure of greater liberality in the use of functional expressions in the definition of elements in proper combination claims is authorized by section 112, than has been permitted by some of the stricter decisions of the courts in the past.” This “measure of greater liberality,” however, is subject to well defined limitations, for Congress did not intend, by incorporating the third paragraph into section 112, to destroy certain basic precepts of patent law. Thus, though appellants’ arguments would necessarily lead to the opposite conclusion, it is still true that “the claim is the measure of the invention.” The requirement in the second paragraph of section 112 that “the specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention” has not been at all diminished *916 by the addition of the third paragraph; the latter paragraph must be read in the light of the first and second paragraphs and given an interpretation consistent with their clear meaning. In re Arbeit et al., supra.
So much, we feel, is well established. What, then, would be the effect of adopting appellants’ argument as to the effect of the last clause of the third paragraph of section 112? Under the existing patent law, an applicant for a patent is given broad latitude in claiming his invention. He is afforded ample opportunity to obtain necessary protection for his invention by the practice of allowing him to present claims of varying scope to the same invention in one application. Such claims may vary from the most specific, in which the elements of the invention are recited in detail, to those which are rather broadly defined, of which claims containing recitations of means for performing a specified function are representative. Each claim, whether broad or narrow, is, of itself, a separate entity, and each grants a different measure of protection to the inventor.
It is at once obvious that appellants’ intended construction of the phrase under consideration would eliminate the distinction between a combination claim whose elements are recited broadly as means for performing a specified function and a combination claim in which the same elements are recited in detail, for, so they would contend, the tribunals of the Patent Office must consider the means clause as though it incorporated the corresponding structure described in the specification (which structure has been defined specifically in the narrow claim). To so construe this language of the act would effectively eliminate the broad protection which is at present afforded inventors. That appellants could not have contemplated such results is evidenced by the fact that their own application contains both broad and narrow claims.
We are of the opinion, therefore, that, notwithstanding the third paragraph of section 112, it is the language itself of the claims which must particularly point out and distinctly claim the subject matter which the applicant regards as his invention, without limitations imported from the specification, whether such language is couched in terms of means plus function or consists of a detailed recitation of the inventive matter. Limitations in the specification not included in the claim may not be relied upon to impart patentability to an otherwise unpatentable claim. In this regard, it is worthy of note that the Ball & Hair case, supra, on which appellants so heavily rely, is not inconsistent with our analysis of section 112, despite appellants’ interpretation of language used by the board therein, for the means clause there relied upon to distinguish certain claims over the *917 prior art, taken together with the other elements associated with said clause, properly and adequately defined the claimed invention without recourse to structure disclosed in the specification.
With the foregoing considerations in mind, we will proceed to an examination of the claims on appeal.
Claim 54 was rejected by the examiner as unpatentable over Hull in view of Machts and the Heiland Article. The board, without specifically reversing the examiner on any of his grounds of rejection, held that Hull disclosed each of the elements of this claim. Appellants contend that:
(1) the Hull patent is not a lawful reference since the specification of the Hull application as filed was obscure and inaccurate and did not constitute an adequate disclosure of his alleged invention;
(2) the teachings of Hull relied upon by the board in the rejection of the appealed claims were introduced into his disclosure by amendment, the effective date of which is subsequent to the date to which appellants are entitled;
(3) even assuming that Hull’s original disclosure was adequate, no mention is made therein of an “airplane,” a detecting instrument “adapted * * * automatically to receive and respond * * * with a sensitivity of one gamma or less * * *,” or a “record making device.”
We are of the opinion that the foregoing arguments of appellants are not well taken and that the rejection of claim 54 must be sustained. While the amendments to Hull’s originally submitted disclosure were numerous, there was adequate disclosure in the specification as filed to meet each element as broadly recited in claim 54 (as well as several of the limitations presented by the other claims in this appeal). Thus, Hull discloses:
The presence of discontinuities or anomalies in the earth’s field may he utilized for control or observance purposes by employment of the output voltage of amplifier 65 in a control or indicating arrangement. For the purpose of illustrating such an application I have merely chosen to represent a recording or indicating device 79 energized in response to an electrical quantity produced by amplifier 65. [Italics added.]
Hull, as well, originally disclosed:
The above described system is particularly applicable to the investigation of the earth’s magnetic field for the purpose of determining the location of mineral or oil deposits, metallic bodies, etc. * * *.
The system is constructed of elements peculiarly adaptable for the conditions imposed by air travel inasmuch as the control elements are of rugged construction and character. The amplifying and magnetometer circuits are of particular note in this respect inasmuch as no moving or readily breakable parts are involved.
The above described system also performs with a high degree of accuracy even though subjected to vibration incident to carriage in aircraft, the system being *918 capable of affording accurate indications of field discontinuities or anomalies even though subjected to continuous vibration of the nature encountered in aircraft.
Appellants contend that Hull’s disclosure of the use of his apparatus on “aircraft” does not meet the limitation in claim 54 of a maneuverable “airplane”; that the statements in Hull’s specification to the effect that the “methods and system are peculiarly adapted for slow searches over a relatively small area” [emphasis added] and the reference by Hull to positioning his device “directly over an anomaly” indicate, at best, the teaching by Hull of the use of a dirigible as distinguished from an airplane. Other arguments along this vein are advanced and need not be elaborated upon. Granted, Hull may have “had in mind” the use of a slow-moving dirigible; the question to be answered, however, is not what Hull may have contemplated in filing his application, but what his disclosure would reasonably suggest to the skilled artisan. We are of the opinion that the disclosure taken as a whole, in view of the statements therein to the effect that the system is “capable of affording accurate indications of field discontinuities or anomalies even though subjected to continuous vibration of the nature encountered in aircraft,” would suggest to one skilled in the art that the system may be used in conjunción with an airplane. Furthermore, the Heiland Article teaches that “it has been determined that magnetic measurements may not only be made in ballons (sic), but in airships and airplanes as well.” [Emphasis added.]
Appellants further contend that the board erred in holding that Hull discloses a detecting instrument adapted to respond with a sensitivity of one gamma or less magnetic effects of earth anomalies; that Hull actually discloses a one gamma sensitivity with respect to the positioning magnetometers for his stabilizing element and not with respect to his detecting magnetometer. It is true that Hull appears to be referring to his positioning magnetometers at the point at which he discloses the sensitivity of his magnetometers. It is not seen, however, that, assuming that Hull’s detecting magnetometer is not as sensitive as his positioning magnetometers, to increase the sensitivity of Hull’s detecting magnetometer to one gamma or less would amount to more than a change in degree. Furthermore, the disclosure of positioning elements having a sensitivity of one gamma would clearly suggest to one skilled in the art, the use of a similarly sensitive element for the detecting magnetometer, if such were desired.
It is thus apparent that Hull either expressly discloses or reasonably would suggest to one skilled in the art, each element in the claimed combination, including the recited function of the detecting instrument. In view of our foregoing analysis of 35 U. S. C. 112, it is not seen that claim 54 patentably defines over the prior art. We accordingly sustain the board’s rejection of this claim.
*919 Claim 51, which is dependent upon claim 54, and which describes the structure of the detecting instrument, primarily in terms of the characteristics of the core structure, was rejected by the board as unpatentable over Hull. The board was of the opinion that appellants had not shown improved results in connection with the use of this particular instrument over that shown by Hull. Hull discloses that his detecting instrument is provided with a pair of coils, each having a core of high permeability metal. In view of the Hull disclosure that his system performs well when subject to the vibrations incident to air travel, it is clear that this claim attempts to define over Hull only in the recitation that the metal core is “strongly resistive to change in * * * thermal variations, or barometric fluctuations * * (The phrase “such as nichrome” does not serve to delimit the claim.) We agree with the board that appellants have not shown improved results in their structure over those obtained by the use of the Hull structure. Appellants have not demonstrated that the thermal variations or barometric fluctuations encountered in air travel would materially, if in any way, affect the effectiveness of the detecting instrument. In the absence of such a showing we are constrained to conclude that the use of a metal core with characteristics as defined in this claim would not involve invention over the Hull disclosure.
Furthermore, we are of the opinion that even assuming that appellants have improved the specific core structure of their detecting instrument, claim 51 is nevertheless unpatentable over the cited art. No new or unobvious cooperation between the elements of the combination has been demonstrated. Improvement in the details of one element of a combination does not necessarily produce a new and patentable combination. In re Tibony, 44 C. C. P. A. (Patents) 801, 241 F. 2d 953, 113 USPQ 10.
Claim 56, as well, is unpatentable over Hull. Hull discloses the use of two positioning magnetometers which are perpendicular with respect to each other and perpendicular to the axis of the magnetic detecting coil. This arrangement permits the response by said positioning magnetometers to two components, such as the horizontal and vertical lines of force, of the magnetic field under observation. Hull’s detecting magnetometer, on the other hand, is arranged to detect the total magnetic field. We are of the opinion that the teaching in Hull relating to the relationship of the positioning magnetometers would clearly suggest to one skilled in the art a similar relationship with respect to the detecting magnetometer if it were desired to measure other than the resultant component of the magnetic field. We therefore sustain the board’s rejection of claim 56.
*920 Claims 57 and 58 were rejected by the board as unpatentable over Hull in view of the “Physical Review” article. Claim 57 depends from claim 54 and adds thereto the limitation that the detecting instrument includes at least one magnetron together with a control coil and means for supplying electric current to the control coil. Claim 58 is dependent upon claim 57 and modifies said claim by adding an auxiliary feedback coil connected in opposition to the control coil. As aforesaid, the “Physical Review” article discloses the general adaptation of magnetron circuits to the measurement and detection of magnetic fields. Also, we have previously pointed out that the Hull reference fairly suggests the use of a magnetometer of a sensitivity of one gamma for use as the detecting instrument. It would be obvious to one skilled in the art, in view of the foregoing, to substitute a magnetron for the magnetometer detecting instrument of Hull.
Appellants, however, contend that the “Physical Review” article is concerned only with magnetrons adapted to measure magnetic fields having a strength of from 1/100 to 500 gauss whereas appellants’ claimed structure is sensitive to one gamma or less which is equivalent to 1/100,000 gauss; and that while the “Physical Review” article does disclose the use of a magnetron for measuring a magnetic field, it does not disclose the use of such an instrument in the airborne environment disclosed and claimed by appellants nor does it show any of the other elements of the claimed combination.
The second of appellants’ arguments is too weak to require extensive rebuttal. Suffice it to say the article contains disclosure sufficient to suggest to a skilled artisan the substitution of a magnetron for the magnetometer of Hull. As to the former of the foregoing contentions, we are of the opinion that to modify the sensitivity of the magnetron to one gamma to correspond with the suggested sensitivity of the Hull magnetometer would amount to no more than a change in degree. Whether or not invention resides in the combination of the specific magnetron disclosed in the specification by appellants with the other recited elements, it is not necessary for us now to decide. It is clear that appellants cannot obtain from the claimed device a result different from that disclosed by a combination of the Hull and “Physical Review” references. As heretofore stated, appellants cannot rely upon the “adapted” clause in claim 54, on which claim 57 depends, to incorporate limitations in the claim so as to patentably define over the cited art.
With reference to claim 58, the board stated that the use of feedback members in electrical circuits is well known. Appellants' have failed to question the accuracy of said statement by requesting that it be supported by an affidavit under Patent Office Rule 107 and *921 did not present any evidence to contradict it. Therefore we are constrained to accept it as true. In re Lewis, 25 C. C. P. A. (Patents) 1273, 96 F. 2d 1009, 37 USPQ 786. In view of this fact, we fail to see that it would be inventive to use a feedback coil in conjunction with a conventional magnetron coil as broadly recited in claim 58. The rejection of claim 58 is accordingly sustained.
Claim 55 was rejected by the board as unpatentable over Hull in view of Machts and the Heiland Article. This claim recites the method of operation of the apparatus of claim 54 plus the steps of identifying the terrain for subsequent examination and geophysically interpreting the record thus obtained. We are of the opinion that all the steps in this claim save the latter two steps are disclosed by Hull. The Pleiland Article clearly discloses the necessity of correlating geophysical measurements made in an airplane with the ground location by means of accurately timed photographs. The Machts’ patent is merely cumulative as to this disclosure and need not be discussed. We agree with the board that the step of geophysically interpreting the record obtained is a mental operation which cannot impart patentability to a claim. In re Lundberg et al., supra. We therefore sustain the board’s rejection of this claim.
Appellants’ contention that the board erred in its failure to consider their proposed substitute claims 59, 60 and 61, submitted to it in their petition for reconsideration, and in its failure to recommend the allowance of said claims by the examiner, remains to be considered. As aforesaid, the board, in its second opinion, made no mention of the new claims proposed by appellants and therefore we do not have the benefit of its reasons for its refusal to consider said claims. It is to be noted that the new claims had not been submitted to the Primary Examiner for his consideration prior to the submission thereof to the board. In view of this fact, and notwithstanding the discretion granted to the board under Rule 196 (c) to direct the Primary Examiner that a claim may be allowed in amended form, it is obvious that the board was justified in refusing to consider claims that had not yet been considered by the Primary Examiner. These claims not having been passed upon on their merits by the tribunals of the Patent Office, they cannot be here considered. In re Irving L. Stern, 17 C. C. P. A. (Patents) 1234, 40 F. 2d 1000, 5 U. S. Pat. Q. 441; In re Otto Schmidt et al., 18 C. C. P. A. (Patents) 827, 45 F. 2d 916, 8 U. S. Pat. Q. 178.
Though the action of the Supervisory Examiner in refusing to direct the Primary Examiner to reopen prosecution of the case for consideration of the proposed new claims has been discussed in appellants’ brief, it has not been assigned as error and thus cannot be *922 here considered. In re Sebald, 31 C. C. P. A. (Patents) 1148, 143 F. 2d 366, 62 USPQ 90. For the foregoing reasons, the decision of the board of Appeals is affirmed.
O’Connell, Judge, because of illness, was not present at the argument of this case and did not participate in the decision.
Jackson, Judge, retired, recalled to participate herein in place of Cole, Judge, absent because of illness.

 Prosecution of this case had been closed, pending appellants’ appeal to the board, prior to the effective date of the 1952 Act; the board did not consider the appeal, however, until after the effective date of said act.

 “An element in a claim for a combination may be expresses as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.”

 In the Halliburton case, the Supreme Court held invalid for functionality “at the exact point of novelty” a combination claim in which the crucial element was defined as “means associated with said pressure responsive device for tuning said receiving means to the frequency of echoes from the tubing collars of said tubing section to clearly distinguish the echoes of said couplings from each other.”