50 CCPA
## Application of Marion J. CALDWELL.
### Patent Appeal No. 6976.

United States Court of Customs
and Patent Appeals.
June 28, 1963.

Cromwell, Greist & Warden, Chicago, Ill. (Fred S. Lockwood, Chicago, Ill., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–8 in appellant's patent application, Ser. No. 764,262, filed September 30, 1958, for "Animal Feeds Containing Aspirin." Claims 9–11, directed to such feeds and giving percentage ranges for the propor-

tion of aspirin in the feed (0.002% to 0.05%), stand allowed.

### The Invention

Claims 1–4 were also directed to feed but were withdrawn from the appeal at the oral argument. As to them, the appeal is dismissed. This leaves for our consideration only claims 5–8 which are directed to method and read:

"5. The method of stimulating growth of ruminants, poultry and swine which comprises feeding animals rations supplying an effective amount of aspirin for growth stimulation.

"6. The method of stimulating growth which comprises feeding ruminants rations supplying an effective amount of aspirin for growth stimulation.

"7. The method of stimulating growth which comprises feeding poultry rations supplying an effective amount of aspirin for growth stimulation.

"8. The method of stimulating growth which comprises feeding swine rations supplying an effective amount of aspirin for growth stimulation."

It will be seen that claim 5 is generic to the others and that one of the limitations common to all claims is that the method is to be applied to certain animals, namely, *ruminants, poultry, and swine.*

A second limitation common to the claims, and the essence of the invention sought to be patented, is that the method of stimulating growth resides in feeding the named animals *aspirin.*

The final limitation relates to the *amount* of aspirin and the amount is stated in functional terms, *"an effective amount * * * for growth stimulation."* (Emphasis ours.)

### The "Prior Art"

Insofar as *stimulating* the growth of any animals by feeding them aspirin is concerned, there does not appear to be any prior *art.* A single reference has been cited, somewhat erroneously referred to by the examiner as "prior art," as will appear, namely,

> "Gross—The Salicylates, 1948, Hillhouse Press, New Haven, Conn., page 123."

The only portion of that work relied on by the examiner reads:

> "Kaiser [*1936*] gave 10 to 15 gr. of acetylsalicylic acid with magnesium oxide daily to 75 children for periods of 6 months to 1 year. No effect was observed on the rate of increase in weight and height as compared to 75 control children.

> "Krantz, Iwamoto and Farson [*1946*] fed a basic diet with 0.5 per cent acetylsalicylic acid or 0.2 to 0.5 per cent acetyl-5-bromosalicylic acid to rats for 8 weeks and measured their growth. In the animals given the acetylsalicylic acid there was no retardation of growth, while in those receiving acetyl-5-bromosalicylic acid there was virtually no growth."

Acetylsalicylic acid is, of course, aspirin. See any modern dictionary and Bayer Co., Inc. v. United Drug Co., 2 Cir., 272 F. 505, 11 T.M.Rep. 178. Although aspirin is practically our national drug, it does not appear from anything of record that its use as a growth *promoter* for any animal, human or otherwise, has ever been even suggested. As for the reference, we are in complete agreement with the appellant, whose brief states:

> "It seems pretty clear that the Gross reference stands for, and suggests, only one thing as far as the present case goes. That is, that feeding aspirin to children and rats over prolonged periods does not interfere with or retard growth of these two species of animals. As far as aspirin goes, this is the only teaching that can be derived from the reference."

The Patent Office Solicitor attempts to make no more of it. He says:

> "Gross refers, on page 123 of a book entitled 'The Salicylates' (R–19), to the effect of aspirin on

growth and states that Krantz et al. fed a basic diet with 0.5% acetylsalicylic acid to rats for 8 weeks and found no retardation of growth."

And that is all he says.

Our reaction to the disclosure of the sole reference is that anyone reading it would extract from it only the impression that aspirin in reasonable or practical dosages has no affect whatever on animal growth. To anyone interested in finding a drug for inducing weight increase, we would say that the reference definitely "teaches away from" the use of aspirin for that purpose.

### The Rejection

■■ The solicitor's brief does not include a concise statement of the ground of rejection, which would have been desirable. At least it would have been desirable to include a statement of agreement or disagreement with what appellant says about it.

Appellant's brief, however, totally fails to state clearly what the ground of rejection is and so intertwines "suggestions" as to what the examiner did with argument as to obfuscate the situation.

At the very least, a brief should come to grips with the issue at the outset by presenting a concise statement of what it is that was done by the tribunal below that appellant wishes us to undo. If appellant fails to do it, the appellee should. See Rule 27(3) (a) of this court. This function is not best performed by repeating verbatim, as was here done, two pages of "reasons of appeal," written long before the brief, including the usual generalized statements of error and otherwise couched in the usual repetitious terminology. In fact, in complying with our Rule 27(3) (b), it is generally preferable to us and leads to better briefs to include in the brief "Such of the errors as shall be relied upon" by merely referring to those relied on as they appear in the record, already printed.

In the absence of assistance from counsel, we turn, therefore, to the record to discover the ground of rejection. The examiner's final rejection was on the sole ground that claims 1–8 are "unpatentable over Gross." In his answer on the appeal to the board he said:

"Claims 1–8 are rejected as *unpatentable over Gross* who discloses * * * feeding rats a basic diet with 0.5 percent acetylsalicylic acid or 0.2 to 0.5 percent acetyl-5-bromosalicylic acid for 8 weeks. Appellant seeks to distinguish over this teaching by attempting to limit the claims so as to exclude rat feed and feeding rats. It is not clear that the composition of a rat *feed* would distinguish patentably over the *feed* of ruminants, poultry or swine. In any event it would appear that *no invention* would be involved in incorporating aspirin in the feed of other animals for the same purpose taught by Gross, namely *studying* the effect of the aspirin on the growth of the animals. Judicial notice may be taken of the fact that aspirin is commonly mixed in food in order to administer it to babies. Thus the attempt to exclude rat feed or feeding rats from the claims would not render the claims patentable because of the *obviousness* of the one *feed* over the other. These claims define the *proportion* of aspirin in the feed in *functional* language and *thus* applicant *seeks to distinguish over the Gross teaching* at the exact point of novelty." [Emphasis ours.]

In affirming this rejection, the board restated it by saying, "Claims 1 to 8 have been rejected as *unpatentable over Gross.* * * * It is the position of the Examiner that the *only real novelty* over the reference *is in the proportions* of aspirin as defined in the allowed claims." (Emphasis ours.) Continuing, the board said:

"The reference clearly discloses an animal feed including aspirin. We are of the opinion that merely denoting it as a swine feed, for example, rather than a feed intended to be fed to animals generally or to rats *does not patentably distin-*

*guish* the claimed composition *from the prior art. \* \* \*.*

"\* \* \*. We do not find that the *proportions* of aspirin, defined in *functional* terms are of any patentable significance, beyond the proportions set out in the allowed claims." [Emphasis ours.]

In an opinion on reconsideration, the board said:

"The prior art clearly discloses feeding rats rations containing aspirin. We remain of the opinion that feeding the same composition to some other animal is not a patentable invention. \* \* \*. We remain of the view that the definition of the proportions in functional terms is of no patentable significance beyond the proportions set out in the allowed claims."

What does all this mean? In the first place, it is to be noted that the board, like the examiner, made no distinction between the claims to a *feed*, which have been dropped (except for the allowed claims specifying percentages of aspirin), and the claims on appeal which are to a *method*. Regardless of this fact, it is entirely clear to us that *there is but one rejection* and that is, *unpatentability over the disclosure of Gross*. In considering that rejection, and only for that purpose, the Patent Office has regarded the "function" definition of the "proportions" [1] of aspirin as without significance in helping patentably to distinguish the claims over Gross.

At oral argument, in response to a question from the bench, the solicitor stated that the ground of rejection before us is that claims 5–8 are unpatentable over Gross, predicated on 35 U.S.C. 103.

With the issue thus crystallized, we now proceed to a consideration of the propriety of the rejection.

## Opinion

In the foregoing rejection it will be seen that the claims were never rejected on the *ground* that they were functional. The *fact* that the *amount* of aspirin was expressed functionally was used only in support of the rejection for unpatentability over Gross. The sole issue we have to decide is obviousness of the claimed method in view of the teaching of that reference. 35 U.S.C. 103.

It is impossible to say whether the board agreed or disagreed with the examiner's view that "the only real novelty over the Gross composition is in the proportions of aspirin as defined in the allowed claims." The board merely held that the claims with the functional definition of amount did not distinguish from Gross. Our view of the matter, with respect to the method claims, is that the *real* novelty is as defined in all of the appealed claims—stimulating the growth of ruminants, poultry, or swine *by feeding them aspirin* for that purpose. Gross obviously suggests no such method. On the contrary, that reference suggests that such a method is an impossibility, not merely as a theoretical proposition, moreover, but on the basis of laboratory tests and controlled experiments. We therefore disagree with the rejection on Gross, the only rejection made, and also with the corollary proposition that the "real novelty" must reside in the amount of aspirin fed, rather than in the feeding of aspirin for the stated purpose.

While the Patent Office tribunals made no suggestion that the functional definition of amount in the appealed claims was in any way *objectionable*, confining their views to the inability of that definition to distinguish over the reference, the solicitor's brief seems to have misapprehended the situation and indulges in lengthy discussion of an

---

1. It was perhaps proper to speak of "proportions" with respect to the amount of aspirin in the ration of *feed* referred to in the *feed* claims 1–4; but with reference to the method claims on appeal it is a question of *amount* of aspirin *fed to the animal* in practicing the method, not "proportions." All the method claims call for is getting an effective amount of aspirin into the animal *in* its rations. These claims do not define "proportions," only amount.

irrelevancy, namely, the requirement of 35 U.S.C. 112, second paragraph, for definiteness in claims, citing our decision in In re Arbeit, et al., 206 F.2d 947, 41 CCPA 719. Neither that statute nor that case has direct bearing on the issue here. We note, however, that in the Arbeit case this court expressly approved the use of terminology in claims, to which the Patent Office had objected as "functional." Here appellant is alleging as unobvious the *use* of aspirin *for growth promotion*, in named animals, not the *amount* used, which may be from the least effective amount to the amount beyond which no further beneficial effect is observed. In other words, (unsuited to traditional patent claim terminology), enough to work but not too much. "Effective amount" admirably states what is to be derived from the disclosure of the specification as to amount and we can see nothing "critical" about the amount in determining the existence of patentable invention.

Furthermore, and though we feel that there is no issue here as to the propriety of so-called "functional" definitions of uncritical *amount*, it may be helpful to note that such definitions are not only common but have been expressly approved in many cases including the following: Locklin et al. v. Switzer Bros., Inc., 299 F.2d 160 (C.A. 9th); Sales Affiliates, Inc. v. Hutzler Bros. Co., 71 F.Supp. 287 (D.C.Md.), aff'd, 4 Cir., 164 F.2d 260; Ex parte Sperr, 12 USPQ 194 (PO Bd.); Ex parte Carter, 52 USPQ 186 (PO Bd.); Ex parte Kellog, 84 USPQ 380 (PO Bd.); and Ex parte Ebel and Drew, 84 USPQ 202 (PO Bd.). Also, analogous "functional" limitations with respect to uncritical time or temperature have been approved in claims in: Ex parte Ebel and Drew, supra; Ex parte Fowler and Otis, 46 USPQ 425 (PO Bd.); Proctor & Gamble Mfg. Co. v. Refining, Inc., 135 F.2d 900 (C.A.

4th); and Ex parte Clarke, 98 USPQ 195 (PO Bd.).

▮ As we said in In re Arbeit,

"We have no authority to reject an appealed claim in an application upon an *allowed* claim in such application, * * *. So, claim 43 must be considered in the light of prior art and upon its own merits, if any, *without reference to allowed claim 42."* [Last emphasis ours.] [2]

In the instant case, both the examiner and the board made comparisons of the scope of the appealed claims and the allowed claims, implying that the allowed claims represent all appellant is entitled to. This is irrelevant. The only question here is the allowability of the appealed claims under the law. We find them allowable.

The appeal is dismissed as to claims 1–4. As to claims 5–8, the decision of the board is reversed.

Reversed.

MARTIN, J., concurs in result only.

WORLEY, Chief Judge (dissenting).

Appellant seeks a patent on a process in which he incorporates aspirin in feed for "ruminants, poultry and swine." He has been allowed those claims in which the proportion is expressed as being "from 0.002% to 0.05% by weight of aspirin." He was denied those claims in which the aspirin ratio is expressed as being "an effective amount of aspirin for growth stimulation," on the grounds of "obviousness" [1] in view of the prior art, *and* because that language was "functional." [2] The latter ground is clearly recognized and discussed in the solicitor's brief.

In affirming the examiner the Board of Appeals stated:

" * * * We do not find that *the proportions of aspirin, defined in*

---

**2.** This statement may be a little too broad. If a claim were rejected as a duplicate of an allowed claim or if there were a rejection for undue multiplicity, it might give rise to one of those "rare instances"

referred to in the Arbeit case, "requiring our study of such claims."

**1.** 35 U.S.C. 103.

**2.** 35 U.S.C. 112.

*functional terms are of any patentable significance, beyond the proportions set out in the allowed claims.* It is noted that the tables on page 2 of the specification indicates that the rate of growth declines after a maximum rate of growth is attained as the amount of aspirin in the feed is increased. * * *" (Emphasis supplied)

While there is some doubt that the reference would necessarily make it obvious to do what appellant has done, there can be no doubt that the language, "an effective amount of aspirin for growth stimulation" is functional in nature and of no patentable significance inasmuch as it describes the amount of aspirin merely in terms of the desired result, rather than by the means disclosed for producing that result.

Under certain circumstances "functional" language is permissible, but Congress could not have intended such indiscriminate use as here. As we said in In re Lundberg, 244 F.2d 543, 44 CCPA 909:

"* * * The requirement in the second paragraph of section 112 that 'the specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention' has not been at all diminished by the addition of the third paragraph; the latter paragraph must be read in the light of the first and second paragraphs and given an interpretation consistent with their clear meaning. In re Arbeit [et al]. * * *" [206 F.2d 947, 41 CCPA 719].

Section 112 expressly requires that claims particularly point out and distinctly claim the subject matter of the invention. Appellant has done that in his allowed claims. But the language "an effective amount of aspirin for growth stimulation" clearly covers more than what appellant has in fact invented. To allow a claim of such vagueness and breadth would necessarily preclude others from further development in this field, else risk infringement, and would grant appellant an unjustifiable monopoly.

I would affirm.