56 CCPA

### Application of Dieter OSSWALD.
### Patent Appeal No. 8066.

United States Court of Customs and Patent Appeals.

Feb. 6, 1969.

---

James E. Bryan, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and KIRKPATRICK,[*] Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the final rejection of claims 1 to 34, all of the claims of appellant's application entitled "Developer for the Dry Development of Electrophotographic Material."[1]

The invention relates to an electrophotographic dry developer and a process for developing an electrostatic image using the developer. The established process of making and developing electrophotographic images comprises the steps of electrostatically charging a photoconductive insulating material, subsequently exposing the material to a light image whereupon the charge leaks away in the exposed areas, followed by treatment with a developer that renders the resultant electrostatic image visible to the eye. The developer consists of a mixture of finely divided resins loosely held by finely divided inorganic substances due to electrostatic charges of opposite polarity. When the developer cascades over the electrostatic image, the resin particles are attracted by the image to be developed while the inorganic particles roll away.

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 232,241 filed October 22, 1962.

The quality of the electrostatic images produced with these developers depends to a considerable extent upon the relative atmospheric humidity, and where the humidity is greater than 65 per cent, reproduction is said to be inadequate.

Appellant's invention comprises a dry developer containing finely divided resins, synthetic or natural, and finely divided oxidation products of metals or metalloids, preferably the elements of the main and subgroup IV of the Periodic System, such as silicon, tin, titanium and zirconium. Additional elements located in groups III, V and VI of the Periodic System are also usable. The metal or metalloid oxides, prior to mixing with the resins, are treated in a known manner with any of a group of compounds known generally as halogen silanes. The silanes disclosed are halogenated silicon compounds substituted with hydrocarbon substituents.

Appellant's developer allegedly gives electrostatic powder images well covered with the resin component and having sharp margins, even in a relative atmospheric humidity of 65 to 95 per cent. The advantages are said to result primarily from the fact that the charge acquired by the particles of oxidation products, with respect to the resin powders, is so much increased that the two components adhere more firmly to each other than is the case with the known developers.

The independent claims, 1 and 18, are illustrative:

1. An electrophotographic developer comprising an effective amount of a finely divided resin in admixture with an effective amount of a finely divided oxidation product of the group consisting of metals and metalloids the surface of which has been treated with a halogen silane.

18. A process for developing an electrostatic image which comprises contacting the image with a developer comprising an effective amount of a finely divided resin in admixture with an effective amount of a finely divided oxidation product of the group consisting of metals and metalloids the surface of which has been treated with a halogen silane.

Claims 2 and 3 are limited respectively to a natural and a synthetic resin. Claims 4 and 12 specify subgenerically the class of metals or metalloids used, while claims 6 to 11 recite specific individual materials as the oxidation product component of the developer. Claim 5 adds to the developer a dyestuff. Claims 13 to 17 include specific limitations as to the halogen silane used to treat the oxidation product. Claims 19 to 34, dependent from method claim 18, essentially parallel, as to the specificity of developer composition, the composition claims discussed above.

The references relied upon are:

| | | |
|---|---|---|
| Safford | 2,424,853 | July 29, 1947 |
| Walkup et al. | | |
| (Walkup) | 2,638,416 | May 12, 1953 |
| Kienle et al. | | |
| (Kienle) | 2,717,246 | September 6, 1955 |
| Greig I | 2,874,063 | February 17, 1959 |
| Wielicki | 2,986,521 | May 30, 1961 |
| Greig II | 3,060,021 | October 23, 1962 |

Greig II discloses electrostatic printing with an improved developer powder consisting of finely-divided particles of a semiconductive zinc oxide which has been coated with a film-forming material such as wax.

Wielicki discloses a dry developer, the electroscopic material of which is com-

posed of low-melting synthetic resins or waxes. Zinc oxide may also be used; however, then a film-forming thermoplastic coating is first applied to the material. The developer material is then coated with colloidal silica to provide reversal type developer powders.

Greig I relates to electrostatic printing with a developer mix consisting of finely divided resins, gums or waxes and a ferromagnetic carrier such as iron or magnetite particles. The carrier particles may be coated with an organic insulating film or metal film to alter the triboelectric effect.

Walkup teaches preparation of a dry developer by mixing an electroscopic powder and a granular carrier. The electroscopic powders are insulating materials consisting of modified resins and may be colored with suitable pigments. The granular carriers are materials of either a conducting or insulating nature, provided only that when in close contact with the electroscopic powder, the carriers acquire a charge that is opposite to the powder, and may consist of a wide variety of materials ranging from synthetic resins to inorganic salts or inorganic oxides such as zircon.

Safford discloses the treatment of titanium dioxide with organo-silicon halides to render the oxide water repellent. The halogen silane treatment produces a water-repellent dielectric material whose electrical properties are uniform and substantially independent of changing humidity conditions. A dielectric sheet prepared by compounding the treated oxide with a synthetic resin is disclosed.

Kienle discloses coating titanium dioxide with a water-insoluble polyvalent metal hydrous oxide and a superimposed coating of a polyorganosiloxane to give increased resistance to water wetting. In addition to being water repellent, the oxide is characterized as being a free-flowing powder that does not cake, agglomerate or cohere on storage due to the fact that the silicon coatings provide the particle with a smooth, nontacky surface. The patentee indicates that the hydrous oxide coating is necessary for the desired hydrophilic properties.

The board affirmed the examiner's final rejection of all the claims on two grounds: (1) that the claims were unpatentable over Greig II in view of Wielicki, Greig I, Walkup, Safford and Kienle, under the terms of 35 U.S.C. § 103, and (2) that under 35 U.S.C. § 112 the claims were rejected as failing to properly define the invention.

In sustaining the examiner's rejection on prior art, the board took the position that:

> The primary novel concept presented in this application involves the use of a halogen silane for the treatment of an oxidation product of a metal or metalloid for the purpose of avoiding the deleterious effects of high atmospheric humidity of greater than 65% due to the effect of the moisture on the developer. The composition without the silane treatment appears to be old in the art as shown by the references and from appellant's explanation of the subject matter involved.

> As pointed out by the Examiner, it is old to treat an oxidation product of the type claimed with a halogen silane for the precise purpose in view of rendering it water-repellent so that electric charges thereon will not be affected by changing humidity and this is shown by Safford * * *.

The board's response to appellant's contention that Safford and Kienle were nonanalogous references was that:

> * * * we do not find such arguments persuasive as the particular purpose for treating the oxide in the references is for the same purpose as in appellant's composition, which is to render the oxide independent of changing humidity conditions.

The rejection based on 35 U.S.C. § 112 was affirmed by the board because the recitation "an effective amount" was

considered to be indefinite on its face, in view of the fact that it failed to recite the function that was to be rendered effective, citing In re Frederiksen, 213 F.2d 547, 41 CCPA 927, and In re Caldwell, 319 F.2d 254, 50 CCPA 1464.

Appellant challenges the correctness of the board's decision by contending that the Safford and Kienle references are from arts completely nonanalogous to the electrophotographic art and accordingly it is improper to combine these two with the other four references which are said to be irrelevant to the present invention. Furthermore, it is contended that there is no suggestion that any of the references can be combined to meet the recitation of the claims.

Appellant argues that the purpose of treating the oxide in his invention is "to only a minor degree concerned with 'changing humidity conditions,'" relying on the statement in the specification that:

The advantages to be gained by the use of the developer of the invention instead of the developers hitherto known result primarily from the fact that the charge acquired by the particles of oxidation products, with respect to the resin powder, is so much increased that the two components adhere more firmly to each other than is the case with the developers hitherto known.

We cannot accept this argument. More convincing is the solicitor's observation that:

* * * other portions of the specification speak in other terms, such as that "above all", sharp images are produced with appellant's developer, "even in a relative atmospheric humidity of 65 to 90 per cent" * *, and * * * emphasize that the utility of the specific developers is found when used under relatively high humidity conditions. Further, the disclosure in the specification of the prior art and its disadvantages * * * makes it abundantly clear that appellant, recognizing the problems when

the relative atmospheric humidity exceeded approximately 65 per cent, devised a developer to eliminate those problems, as is evident from the various specification statements referred to above.

We feel that it is fairly established that appellant was seeking to solve a problem relating to the adverse effects of moisture on developer powders. The question then is whether one having ordinary skill in the art of making and developing electrophotographic images, faced with the problem above, would reasonably look to what the prior art taught relative to protecting the components of such developers from the effects of atmospheric humidity. We think he would and furthermore, having done so, would find that Safford is concerned with overcoming the hydrophilic properties of titanium dioxide, one of the oxidation products disclosed by appellant, by treating it with a halogenated silane, as does the appellant, obtaining thereby "material whose electrical properties are uniform, [and] substantially independent of changing humidity conditions * * *." Thus, we feel, the reference renders obvious appellant's solution to the humidity problem.

We can find no persuasive argument in support of appellant's contention that the patents to Greig, Wielicki and Walkup are irrelevant to the present invention. While appellant contends that the examiner and board failed to address themselves to the dependent claims but merely made a blanket rejection of all the claims without pointing out wherein the specific limitation of the dependent claims are obvious in view of the references, we observe that the board did consider that "the recital of such old known materials in the various claims does not patentably distinguish them over the references" and concluded that the claims were not patentable over the references cited. The solicitor, in his brief, has clarified the board's statement by a more detailed discussion of the reasons for considering the dependent claims obvious; however, appellant has

not effectively rebutted this position by providing the court with the benefit of his views as to the unobviousness of the specific recitations in the dependent claims. In view of the record and arguments presented, we are constrained to agree with the board that "[t]he composition without the silane treatment appears to be old in the art as shown by the references and from appellant's explanation of the subject matter involved."

Failing to find error in the board's affirmance of the rejection of claims 1 to 34, under 35 U.S.C. § 103, as obvious in view of prior art, we deem it unnecessary to consider the rejection of the claims under 35 U.S.C. § 112.

The decision is affirmed.

Affirmed.

KIRKPATRICK, J., took no part in the decision of this case.